Michael Foster NEEL, M.D.; Leslie Skinner Welborne, M.D.; and Live Oak OB/GYN, P.A., Appellants,

v.

**TENET HEALTHSYSTEM HOSPITALS DALLAS, INC., Appellee.**

No. 05–11–00342–CV.

Court of Appeals of Texas, Dallas.

Aug. 27, 2012.

Rehearing Overruled Oct. 3, 2012.

Brent William Bailey, Richardson, TX, Gabrielle H. Kickham, Patrick Dennis Souter, Brent E. Dyer, Looper, Reed & McGraw, P.C., Dallas, TX, for Appellants.

Joe Don Ridgell and Blair G. Francis, Francis, Orr & Totusek, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, LANG-MIERS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

The trial court granted summary judgment in favor of landlord Tenet HealthSystem Hospitals Dallas, Inc., holding Michael Foster Neel, M.D., Leslie Skinner Welborne, M.D., and Live Oak OB/GYN, P.A. jointly and severally indebted to Tenet under a "Physician Office Space Lease."

Neel and Welborne assign error to the trial court's conclusion they are individually liable for the debt. Welborne and Live Oak also contend summary judgment was improper because they created fact issues on their mitigation and estoppel defenses. We resolve these issues against appellants and affirm the trial court's judgment.

## BACKGROUND

Live Oak is a Texas professional association, and Neel and Welborne are its sole members and officers. Live Oak entered into a five-year lease to rent medical office space from Tenet in Dallas, Texas. The lease identifies Live Oak as the tenant. Both Welborne and Neel signed the lease on lines designated for their signatures, as follows:

Tenant

_____

Leslie P. Skinner, MD

_____

Michael F. Neel, MD

The lease expired by its terms on June 30, 2006. According to Live Oak and Welborne, Tenet encouraged them during the term of the lease to relocate to new office space in Frisco, Texas, and promised to assist in finding a subtenant for the Dallas space. They also assert that Tenet promised to offer recruiting agreements to two new doctors to join Live Oak at the Frisco location. Neel does not join in these claims.

Live Oak relocated to Frisco and vacated the Dallas premises in July 2004. It stopped making lease payments on the Dallas lease after December 31 of that year.

Almost a year after Live Oak stopped making lease payments, Tenet wrote to Live Oak, Welborne, and Neel stating its intent to terminate the Dallas lease due to abandonment, effective midnight November 23, 2005. Two and a half years later, on May 22, 2008, Tenet again wrote to Live Oak, Welborne, and Neel claiming it had mitigated its damages by re-letting the premises for a period beginning February 20, 2006, and demanded payment of $87,329.30 for unpaid rent. That amount reflected a deduction of $26,602.07 for the rental period February 20 through June 30, 2006.[1] Tenet's demand for unpaid rent included an assertion Neel and Welborne, as members of Live Oak at the time the lease was signed, were jointly and severally liable for that rental amount under article 14.12 of the lease. Article 14.12 provides:

Each and every person, firm, corporation, partnership and association comprising Tenant (other than an officer signing on behalf of any corporation) shall be jointly and severally liable hereunder for the full and faithful performance of all conditions and covenants binding upon Tenant.

Two weeks after its written demand, Tenet sued Live Oak, Welborne, and Neel for past due rent, prejudgment interest, and attorney's fees. It alleged Welborne and Neel, as members of Live Oak at the beginning of and during the lease period, were persons "comprising" Live Oak and thus individually liable for past due rent under article 14.12.

After answering and filing verified denials that they were individually liable under the lease, Welborne and Neel filed motions for summary judgment on the issue of their liability. The trial court denied those motions. When Tenet later filed its own

---

1. Appellants Live Oak and Welborne argue in their brief that Tenet did not re-let the premises until after expiration of the Dallas lease. They do not dispute the $26,602.07 deduction, however, and their argument does not affect our analysis.

summary-judgment motion, Welborne and Neel filed cross-motions. The trial court granted Tenet's motion and denied appellants' motions. This appeal followed.

Neel raises one issue on appeal, asserting summary judgment was improper because the lease was between Tenet and Live Oak. He argues Live Oak as a professional association is treated legally the same as a corporation, no valid contract exists between Tenet and him individually, he did not personally guarantee the lease, and Tenet did not seek to pierce Live Oak's corporate veil. Welborne and Live Oak filed a separate appeal and raise four issues. Their first two issues are based on arguments that Welborne was not a party to the lease. In their second two issues, they claim they created fact issues on their mitigation and estoppel defenses and the trial court erred in sustaining objections to Welborne's affidavit.

## DISCUSSION

### STANDARD OF REVIEW

■ The parties filed traditional motions for summary judgment, which we review under established standards. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review de novo whether a party proved its right to prevail as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The moving party has the burden to demonstrate that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. A matter is conclusively established if ordinary minds cannot differ on the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex.App.-Dallas 2010, no pet.). Generally, evidence favorable to the non-movant will be taken as true when we consider whether a disputed material fact issue exists precluding summary judgment. *Nixon*, 690 S.W.2d at 548–49. In that instance, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

■ When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000)). If we determine the trial court erred, we must render the judgment the trial court should have rendered. *Id.*

■ In our appellate review, we may not consider grounds for reversal not presented to the trial court by written summary-judgment motion, answer, or other response. TEX.R. CIV. P. 166a(c). Similarly, a trial court cannot grant summary judgment on grounds not presented. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex.2002).

### INDIVIDUAL LIABILITY

■ We first address whether the trial court properly granted summary judgment against Neel and Welborne individually. All parties claim the lease is unambiguous, and we agree. We therefore construe the lease as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). In doing so, we must determine and give effect to the parties' intentions as expressed in the lease. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex.2005) (per curiam). We consider the entire document and attempt to harmonize and give effect

to all provisions. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 55 (Tex. App.-Dallas 2006, pet. denied). The objective intent of the parties controls; accordingly, the contract standing alone usually will be deemed to express the intention of the parties. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

Both appellants and Tenet claim the other is raising arguments for the first time on appeal regarding individual liability, thus precluding appellate review. Before applying the above principles of contract construction to the lease, we therefore review the parties' presentations to the trial court in the context of their appellate issues.

Appellants argue on appeal the lease was between Tenet and Live Oak only. Welborne argues Tenet cannot claim personal liability against the individuals because there is no privity of contract. Both Neel and Welborne argue additionally that they signed the lease as officers of Live Oak, they did not personally guarantee the lease, and Tenet did not seek to pierce Live Oak's corporate veil. Tenet responds that appellants raise contract privity for the first time on appeal; nevertheless, it argues, the summary-judgment evidence proves as a matter of law that Neel and Welborne signed the lease in their representative capacity on behalf of Live Oak and in their individual capacities. Appellants reply that Tenet never claimed in the trial court that Neel and Welborne had signed the lease individually and may not present that argument for the first time on appeal.

Neel sought summary judgment in his original summary-judgment motion and in his cross-motion based on a claim he and Welborne signed the lease in their capacities as "licensed medical doctors and officers on behalf of Live Oak and not in their individual capacity." He asserted Tenet was attempting to treat him as a personal guarantor and argued that he did not sign a guaranty, case law applicable to guaranties shows he was not liable as a guarantor, and article 14.14 of the lease relating to guarantors (as opposed to article 14.12 relating to joint and several liability) would be rendered meaningless if he were held responsible for the debt under article 14.12.

Welborne raised the same points as Neel in her original motion and in her cross-motion for summary judgment. In addition to arguing she did not sign a guaranty of the lease covenants, Welborne added that she did not "otherwise acknowledg[e] in writing her intent to be bound for the Lease obligations of Live Oak." Both Neel and Welborne relied solely on copies of the lease and a Texas Secretary of State filing identifying Live Oak as a professional association and showing Neel and Welborne as the sole officers and members of the association.

Tenet sought summary judgment after the trial court denied Neel's and Welborne's motions. In addition to its summary judgment record for unpaid rent, Tenet relied on its joint response to Neel's and Welborne's summary-judgment motions, the lease and Texas Secretary of State filing, and its specific argument that article 14.12 provided joint and several liability of those "comprising" the tenant, Live Oak. Responding to Neel's and Welborne's motions, Tenet not only asserted that it was not seeking to hold them individually liable as guarantors under article 14.14, but argued as follows regarding execution of the lease:

> Furthermore, having chosen to analyze ¶ 14.12 as a guaranty, Dr. Neel and Dr. Welborne cannot then assume their conclusion that they did not agree[ ] to be

secondarily obligated under the Lease. **By signing the Lease (in whatever capacity), Dr. Neel and Dr. Welborne were executing the Lease and giving effect to all of its provisions, including ¶ 14.12.** *See Wee Tots Pediatrics, P.A. v. Morohunfola,* 268 S.W.3d 784, 791 (Tex.App.-Fort Worth Sept. 18, 2008, no pet. h.) (" '[A] person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and must be held to have known and fully comprehended the legal effect of the contract.' " (quoting *Tamez v. Sw. Motor Transp., Inc.,* 155 S.W.3d 564, 570 (Tex. App.-San Antonio 2004, no pet.)). **They thus knew and agreed that they, as persons comprising Live Oak, would be jointly and severally obligated to answer for Live Oak's obligations under the Lease.**

(Emphasis added).

Neel and Welborne repeatedly asked the trial court to rule on the legal effect of their signatures on the lease. Tenet took the position, as quoted, that the doctors signed the lease containing article 14.12 and, regardless of the capacity in which they signed, they were "executing" the lease and giving effect to all of its provisions.

When, as here, the parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides and determines all questions presented. *Valence Operating Co.,* 164 S.W.3d at 661. The trial court was required to construe the intent of the parties as revealed within the four corners of the lease, which included the meaning of article 14.12 and execution of the lease by "Leslie P. Skinner, MD" and "Michael F. Neel, MD" under the signature block for

"Tenant." In reviewing the trial court's order, we therefore may consider the legal effect of Neel's and Welborne's signatures. Similarly, Neel's claim he and Welborne signed the lease in their capacities as "licensed medical doctors and officers on behalf of Live Oak and not in their individual capacity" and Welborne's claim she did not "otherwise acknowledg[e] in writing her intent to be bound for the Lease obligations of Live Oak" sufficiently placed before the trial court their claims they are not parties to the lease and, accordingly, contractual privity does not exist. *See, e.g., McClellan v. Scardello Ford, Inc.,* 619 S.W.2d 593, 596 (Tex.Civ.App.-Amarillo 1981, no writ) (citing legal definition of privity of contract as the connection or relationship between two or more contracting parties and general rule that a right or duty created wholly by contract can be enforced only between contracting parties or their privies). In sum, we may consider the parties' appellate arguments because their summary-judgment motions and responses sufficiently presented the trial court with the question of whether, applying fundamental contract principles to the unambiguous lease, Neel and Welborne may be held liable individually.

To analyze the lease, we first look to the preamble, which also requires us to consider the execution pages. The preamble identifies the parties to the lease—the landlord is Tenet and the tenant is "named on the execution page attached hereto as Exhibit 'A'." "Exhibit 'A' " is two pages long. The first page contains the statement: "The Tenant name is: Live Oak OB/GYN, PA." The second page contains signature lines and signatures. As quoted above, two signature lines appear under the title "Tenant" with the names "Leslie P. Skinner, MD" printed under the first line and "Michael F. Neel, MD" under the second. Neel and Welborne do not dis-

pute their signatures appear above the respective signature lines. Neither signature contains any referenced capacity, such as president or chief executive officer included for the person signing under Tenet's signature block. "Tenant" is a defined term in the "Definitions" section of the lease, article 3.2.5, and means "all tenants in all cases where there is more than one tenant of the Premises, and the necessary grammatical changes resulted to make the provisions hereof apply to corporations, partnership or individuals, men or women, shall in all cases be assumed as though in each case fully expressed." Throughout the document, which contains sixteen separate articles, the lease provides for tenant responsibilities and rights and primarily references "Tenant" generically. Article 7.6, titled "Care of the Leased Premises," however, references the responsibilities of "Tenant, its agents and employees" to care for and keep the premises in good repair, to comply with the terms of the lease and all laws, and to remove all personal property upon termination of the lease. Article 14.12 titled "Liability for Performance" contains the quoted language in issue that "[e]ach and every person, firm, corporation, partnership and association comprising Tenant (other than an officer signing on behalf of any corporation) shall be jointly and severally liable" for "performance of all the conditions and covenants binding upon Tenant."

In construing this lease, we are to consider the entire document and attempt to harmonize and give effect to all provisions. *See Coker,* 650 S.W.2d at 393; *Hackberry Creek,* 205 S.W.3d at 55. The tenant under the lease is Live Oak. And the only meaning article 14.12 can have is as expressed—each and every person comprising Live Oak is jointly and severally liable for performance of all conditions and covenants binding on Live Oak. Live Oak and Welborne admit "it is clear what Tenet was intending to accomplish by including Article 14.12," but argue the law does not allow such a result.[2] Neel offers no alternative meaning for article 14.12; rather, he argues Tenet cannot hold him personally liable as a person comprising Live Oak because that "is simply not the law in Texas."

Both Neel and Welborne argue they are not parties to the lease and cannot be held contractually liable because (1) they signed the lease only as officers of Live Oak, (2) corporation law provides that when an officer of a corporation signs a contract on behalf of the corporation, the officer is not individually liable, (3) professional associations are treated as corporations and enjoy the powers, privileges, restrictions, and liabilities of corporations, and (4) Tenet has done nothing to pierce the "corporate veil." Tenet responds that appellants have not shown they are entitled to the corporate shield.

■ The general rule is that a corporate officer's signature on a contract, with or without a designation as to representative capacity, does not render the officer personally liable. *See Ward v. Prop. Tax Valuation, Inc.,* 847 S.W.2d 298, 300 (Tex.App.-Dallas 1992, writ denied). Appellants rely on both *Ward* and *Willis v. Donnelly,* 199 S.W.3d 262 (Tex. 2006), for their arguments they may not be held personally liable on the lease. The Texas Supreme Court in *Willis* was applying the business corporations statute, which shields a shareholder, officer, or director from individual liability for the obligations of a corporation. *Id.* at

---

**2.** In their reply brief, they argue for the first time that article 14.12 applies when there is more than one tenant. They do not address, however, how that interpretation applies to this lease in which there is only one identified tenant.

272. One statutory exception, however, is where the individual "expressly . . . agrees to be personally liable to the obligee for the obligation." *Id.* (quoting Tex. Bus. Orgs.Code Ann. § 21.225(1)). This Court in *Ward* recognized that the general rule applies when "it is apparent from the entire contract that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation." *Ward*, 847 S.W.2d at 300. Agency law is based on the same premise—an agent is not personally liable on contracts made for a disclosed principal, in the absence of an express agreement to be bound. *Nagle v. Duncan*, 570 S.W.2d 116, 117 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ dism'd). The agent is not precluded from binding himself, however, if he has pledged his own responsibility in addition to that of his principal. *Id.*

We need not determine whether Live Oak, as a professional association, and Neel and Welborne as its officers and members, have shown they are entitled to the general corporation law protections. Construing the entire lease contract here negates the legal conclusion Neel and Welborne were signing solely as agents of the association and were not agreeing to be bound by the terms of that document as expressed in article 14.12.

■ When we construe a contract to determine the intent of the parties, it is the objective intent that controls. *City of Pinehurst*, 432 S.W.2d at 518. We do not consider the parties' present interpretations or subjective intent. *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex.App.-Dallas 2005, no pet.). The objective intent of the parties, as expressed in the unambiguous language of the lease, was that those persons comprising Live Oak—Neel and Welborne—would be jointly and severally responsible for Live Oak's obligations under the lease. Neel and Welborne signed that agreement on behalf of Live Oak, as indicated by their signatures under the signature block for "Tenant." As Welborne and Live Oak admit, "it is clear" from the document that Tenet intended to make Neel and Welborne individually responsible.[3] Neel and Welborne signed that document without indicating they were signing only in their capacities as agents of Live Oak. Importantly, they signed the lease without indicating they were not agreeing to what Welborne and Live Oak described as the "clear" intent of article 14.12. Other than their reliance on general corporation law, appellants offer no analysis of how their individual signatures, without other designation or qualification, indicated they did not intend to be bound by article 14.12. Neel offers one statement that even if paragraph 14.12 "were somehow determined to be an enforceable provision, Tenet's argument regarding Neel's individual liability would still fail because paragraph 14.12 expressly states that *an officer signing on behalf of a corporation is not liable under the Lease.*" Neel does not address, however, that article 14.12 expressly recognizes corporations, partnerships, and associations as distinct entities and exempts only "an officer signing on behalf of any corporation." Neel also states, without ar-

---

3. The dissent argues article 14.12 is ambiguous. An agreement is ambiguous—thus creating a fact question of the parties' intent—only if it is susceptible to more than one reasonable interpretation. *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex.2012). Rather than suggesting two reasonable interpretations of article 14.12, the dissent appears to take issue with the question of whether, under the dissent's interpretation, the contract could be binding on a nonparty. The only two individuals held liable under the trial court's order are the two who signed the lease.

gument, that both his and Welborne's printed names have "MD" after their names. He offers no explanation of how being a doctor or using that title shields an individual from liability or suggests any capacity in which a person signs a legal document. Finally, none of the appellants suggest an explanation of the need for both Neel's and Welborne's signatures as agents for Live Oak. Thus, the objective intent as shown from the four corners of the lease, and giving effect to article 14.12, was for Neel and Welborne to be jointly and severally responsible for Live Oak's obligations.

We conclude the trial court did not err in rendering summary judgment for Tenet and against appellants as to the individual liability of Neel and Welborne and therefore overrule Neel's sole issue and Live Oak and Welborne's first two issues. By reaching this conclusion, we emphasize that this decision is limited to the record in this case. We do not suggest that Neel and Welborne were legally binding any persons or entities to the obligations under the lease other than Live Oak as the tenant and themselves as expressed in article 14.12 by executing that document.

### MITIGATION AND ESTOPPEL DEFENSES

In their third and fourth issues, Live Oak and Welborne contend they raised fact issues on their mitigation and estoppel defenses. They claimed in their summary-judgment response that Tenet's mitigation efforts were insufficient and "too little, too late." Relying on Welborne's affidavit, they argued Tenet failed "to make any attempt" to find a "sublessor" as promised as part of the incentive to convince Live Oak and Welborne to move to the new Frisco location. According to Welborne's

affidavit, "Tenet had at least one ready and willing tenant (Lorrinda Torres, M.D.) to take over the leased premises, but purposefully waited until the Lease term had expired (allowing unpaid rental to unnecessarily accrue) to allow that new tenant to take over the leased premises." As to their estoppel defense, they asserted pursuant to Welborne's affidavit that Tenet representatives had made "various promises and representations to Live Oak and Welborne" to induce them to move to Frisco, "including that Tenet would assist Live Oak in procuring a sublessor and that it would bring [her] current partner, Melissa Bailey, and her husband, John Bailey, into the new practice under a Recruitment Agreement so that the income level of the new practice could support the rent payments under the Lease until Tenet released the leased premises." Welborne concluded her affidavit with the statement, "Tenet completely failed to make any attempt to procure a sublessor [sic] as promised or to offer a Recruitment Agreement to Melissa Bailey and John Bailey, as represented and the financial representations did not materialize."[4]

Live Oak and Welborne were non-movants on their defenses of mitigation and estoppel. They therefore had the burden to produce sufficient summary judgment evidence to raise a fact issue as to each element of those defenses. *Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

Texas law requires that a tenant asserting a mitigation defense must prove both the landlord's failure to mitigate and "the amount by which the landlord reduced or could have reduced its damages." *Cole Chem. & Distrib., Inc. v. Gowing*, 228

---

**4.** Welborne does not address the basis on which she can claim a mitigation defense on behalf of the tenant, Live Oak. We assume for purposes of our analysis she is entitled to the defense.

S.W.3d 684, 688 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (quoting *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex.1997)). Tenet claims Live Oak and Welborne failed to meet this burden because they did not present any evidence of the amount by which they claim Tenet could have reduced its damages. Tenet further objected to Welborne's affidavit statements as being conclusory, and the trial court sustained those objections.

Live Oak and Welborne appeal the trial court's ruling on Tenet's objections and further argue they presented sufficient evidence to support their mitigation defense. They cite *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220 (Tex.App.-San Antonio 1999, no pet.), regarding the sufficiency of their summary-judgment proof. That case does not support their argument.

*Hygeia* was a negligence case involving the sale of diseased cattle. The court in *Hygeia* determined the trial court had erred by not submitting defendant's mitigation defense to the jury. The defendant argued that when plaintiff began to lose cattle, he should have tested the dead and dying animals to determine the cause of their deaths and should have taken prudent actions to mitigate the losses. Rejecting plaintiff's argument that an instruction was not merited because defendant could not prove "the exact amount of damages" attributable to plaintiff's negligence, the appellate court concluded sufficient evidence existed from which the jury could have derived a "reasoned calculation about the failure to mitigate." *Id.* at 226. The court also addressed what would be insufficient to merit a mitigation instruction, stating "[t]his does not mean a defendant can get a mitigation instruction merely by asserting that a plaintiff failed to mitigate damages." *Id.* at 225. The court added specifically that "[e]vidence must be developed which clearly shows a plaintiff's failure to mitigate caused further damages, and the evidence must be sufficient to guide the jury in determining which damages were attributable to a plaintiff's failure to mitigate." *Id.* Live Oak and Welborne presented no summary-judgment evidence from which any calculation of damages could be reasoned.

In response to Tenet's claim they failed to produce any evidence on the essential element of damages, Live Oak and Welborne suggest *Cole* and *Austin Hill Country* were not summary-judgment cases and neither stated the "burden of proof" at the summary-judgment stage. They do not explain their reasoning or cite to any authority that would alter an element of proof for a defense such as mitigation. As explained above, they rely on *Hygeia*, another jury trial involving a mitigation defense, to support their own assertion they met their burden.

 Even if Live Oak and Welborne were not required to present any evidence from which damages could be calculated in support of their mitigation defense, Tenet contends Welborne's statements are conclusory and incompetent summary-judgment evidence. It likewise contends Welborne's statements supporting the estoppel defense are legally insufficient to raise a fact issue. We agree.

 Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion. *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *James L. Gang & Assocs. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442 (Tex.App.-Dallas 2006, no pet.). A conclusory statement is one that does not provide the underlying facts in support of the conclusion. *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex.App.-Dallas 2008, no pet.); *1001 McKinney Ltd. v. Credit Suisse First*

608

*Boston Mortg. Capital,* 192 S.W.3d 20, 27 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

▇▇▇▇▇ Affidavits not based on personal knowledge also are not competent evidence; the affidavit must affirmatively show a basis for such knowledge. *See Southtex 66 Pipeline Co. v. Spoor,* 238 S.W.3d 538, 542–43 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). And recitations of "personal knowledge" do not convert unsupported conclusions into admissible evidence. *See Primary Media Ltd. v. City of Rockwall,* No. 05–09–01116–CV, 2011 WL 908353, at *3 (Tex.App.-Dallas Mar. 17, 2011, no pet.) (mem. op.); *Stone v. Midland Multifamily Equity REIT,* 334 S.W.3d 371, 376 (Tex.App.-Dallas 2011, no pet.).

Welborne contends the basis for her personal knowledge of the facts alleged is through her position as "an officer of [Live Oak]," citing *Jackson T. Fulgham Co. v. Stewart Title Guaranty Co.,* 649 S.W.2d 128 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). That case involved suit on a promissory note. This Court concluded the affiant's position as the note holder's vice president sufficiently provided the basis for affiant to testify.

Welborne's position as an officer of Live Oak may have established sufficient personal knowledge for her to testify as to Live Oak's business. But the averment material to Welborne's mitigation defense that Tenet contends is an unsupported conclusion is her statement "Tenet had at least one ready and willing tenant, Lorrinda Torres, M.D. to take over the leased premises, but purposefully waited until the Lease term had expired allowing unpaid rental to unnecessarily accrue." Welborne discloses no facts supporting her conclusion Tenet had a ready and willing tenant or that Tenet purposefully waited until the lease term had expired to lease the prem-

ises. The undisputed testimony actually shows Tenet gave appellants a $26,607.07 credit for unpaid rental because it had re-let the premises. Importantly, Welborne states no fact showing how she learned about Tenet's efforts to re-let or its purported decision to wait to lease the premises until after expiration of the lease. Welborne argues generally in her appellate brief that paragraph three of her affidavit provides that basis. Yet paragraph three contains only additional conclusory statements that "Tenet representatives made various promises and representations" that Tenet would assist in procuring a subtenant and would bring Melissa and John Bailey into the new practice in Frisco. Welborne fails to demonstrate how this reference provides the necessary factual basis for her personal knowledge to testify about Tenet's efforts or decisions. Nor does Welborne's recitation of "personal knowledge" transform her conclusions into admissible evidence. *Stone,* 334 S.W.3d at 376. The trial court did not err in sustaining Tenet's objections to Welborne's affidavit regarding Tenet's mitigation of damages.

▇▇▇▇ Live Oak and Welborne also claim they met their burden of raising a fact issue as to each element of their estoppel defense, citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998), for the elements of equitable estoppel. Specifically, they state they were required to show: (1) Tenet "made a false representation to or concealed a material fact from [them]"; (2) Tenet "intended that [they] act on the representation"; (3) Tenet "knew or had means to know the real facts"; (4) they "did not know or have the means to know the real facts"; and (5) they "detrimentally relied on [Tenet's] representation." They argue they met the third element by showing Tenet "knew that it did not intend to

honor its promises and, in fact, never made any efforts to find a replacement tenant and did not offer recruiting agreements to the two doctors." The only part of that statement contained in Welborne's affidavit is that "Tenet completely failed to make any attempt to procure a sublessor [sic] as promised or to offer a Recruitment Agreement to Melissa Bailey and John Bailey." And while they apparently are arguing the "promises and representations" satisfy the first element, Welborne and Live Oak do not state how these "promises" of intent constitute the making or concealing of a material fact. Assuming without deciding the elements of their claim, as stated, satisfy the legal elements of equitable estoppel, Live Oak and Welborne have failed to raise a genuine issue of material fact. Specifically, Welborne recites no fact sufficient to support her conclusions about what occurred or did not occur between Tenet and third parties, and her position as an officer of Live Oak cannot supply that basis. *See Stone*, 334 S.W.3d at 376.[5] Accordingly, the trial court did not err in sustaining Tenet's objections to Welborne's affidavit regarding an estoppel defense. We overrule Live Oak and Welborne's third and fourth issues.

## CONCLUSION

Neel and Welborne are bound to what they agreed by signing a contract that provided expressly for their joint and several liability as persons comprising Live Oak, where they did not designate they were signing only as agents of Live Oak or otherwise indicate they were not agreeing to be bound by those terms. The trial court did not err in granting summary judgment against them individually. Welborne's affidavit in response to Tenet's summary-judgment motion contained conclusory statements insufficient to raise issues of fact on her and Live Oak's mitigation and estoppel defenses. The trial court therefore did not err in sustaining Tenet's objections to the affidavit and granting summary judgment in its favor. Additionally, Welborne failed to address an essential element—damages—of the mitigation defense. We overrule appellants' issues and affirm the trial court's judgment.

LANG–MIERS, J. dissenting.

Dissenting Opinion by Justice LANG–MIERS.

On cross-motions for summary judgment, the trial court granted summary judgment in favor of appellee Tenet HealthSystem Hospitals Dallas, Inc. (Landlord) finding that appellants Michael Foster Neel, M.D. and Leslie Skinner Welborne, M.D. are jointly and severally indebted to appellee on a lease for office space. I would conclude that appellee did not show it was entitled to judgment as a matter of law and would reverse the summary judgment and remand for further proceedings. Because the majority does not, I respectfully dissent.

Landlord sued Live Oak OB/GYN, PA, Neel, and Welborne for past due rent alleging that Neel and Welborne were jointly and severally liable on the office lease between Landlord and Live Oak. Neel and Welborne moved for summary judgment

---

5. Welborne and Live Oak argue in their reply brief that Tenet's failure to produce documents should lead to an inference that Tenet did not act to mitigate its damages or to fulfill its representations to Welborne and Live Oak. They cite no authority and have presented nothing for us to review. *See* Tex.R.App. P. 38.1(i) (failing to brief); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied) (raising new arguments in reply brief).

arguing that they were not liable individually on the lease because they signed the lease in their representative capacities as officers of Live Oak. The trial court denied their motions. Landlord then moved for summary judgment claiming that Neel and Welborne were liable individually, and appellants filed cross-motions for summary judgment, again arguing, among other things, that Neel and Welborne are not liable individually because they signed the lease as officers of Live Oak. The trial court granted Landlord's motion and denied appellants' motions.

Landlord agrees that Live Oak was the tenant and that Neel and Welborne signed the lease on behalf of Live Oak. Landlord explained in its motion for summary judgment that it "joined Drs. Wellborne [sic] and Neel [as defendants] because [of] Article 14.12 of the Lease." Article 14.12 of the lease provides:

> Each and every person, firm, corporation, partnership and association comprising Tenant (other than an officer signing on behalf of any corporation) shall be jointly and severally liable hereunder for the full and faithful performance of all the conditions and covenants binding upon Tenant.

Landlord argued that Neel and Welborne were persons comprising Live Oak and were jointly and severally liable on the lease. Landlord argues on appeal that it proved "as a matter of law, that the doctors executed both in a representative and in an individual capacity." It argues that the language of article 14.12 is unambiguous and that, by signing the lease containing that language, Neel and Welborne agreed to be jointly and severally liable and, "as a matter of law, signed in their individual capacity."

Neel and Welborne argue that they are not liable individually because they signed the lease only as representatives of the tenant, Live Oak. They also argued in opposition to Landlord's motion for summary judgment that even under Landlord's interpretation of article 14.12, they could not be held liable individually because they signed as officers on behalf of Live Oak, and article 14.12 excludes from liability "officer[s] signing on behalf of any corporation."

We construe the lease as a question of law without regard to the parties' subjective interpretations or whether they agree that the provision is unambiguous. *See Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983) (stating court may determine that contract is ambiguous even though parties contend contract is not ambiguous); *Furmanite Worldwide, Inc. v. NextCorp, Ltd.,* 339 S.W.3d 326, 332 (Tex.App.-Dallas 2011, no pet.) (stating court of appeals may determine ambiguity as a matter of law for the first time on appeal). A contract is not ambiguous as a matter of law if the contract as written can be given a definite and certain legal meaning. *Coker,* 650 S.W.2d at 393; *Underwriters at Lloyd's v. Gilbert Tex. Constr., L.P.,* 245 S.W.3d 29, 34 (Tex. App.-Dallas 2007), *aff'd,* 327 S.W.3d 118 (Tex.2010). A contract is ambiguous, however, if "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker,* 650 S.W.2d at 393; *accord Exxon Corp. v. W. Tex. Gathering Co.,* 868 S.W.2d 299, 302 (Tex.1993). If a contract is ambiguous, summary judgment is improper because the interpretation of the contract becomes a fact issue. *Coker,* 650 S.W.2d. at 394.

To succeed on summary judgment, Landlord had to satisfy its burden to establish that Neel and Welborne agreed to be liable individually under the lease as a matter of law. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985) (stating that moving party has burden to demonstrate no genuine issues of

material fact exist and it is entitled to judgment as matter of law). The issue presented here is whether Landlord established that the lease is not ambiguous and imposes individual liability on Neel and Welborne as a matter of law. I would conclude that Landlord did not satisfy its burden and that summary judgment for Landlord should have been denied for at least two reasons: the language Landlord relies on is ambiguous, and Landlord did not establish that Neel and Welborne personally obligated themselves to the terms of the lease as a matter of law.

The lease states that it is between Landlord "and the Tenant, ('Tenant') named on the execution page attached hereto...." The execution page names Live Oak OB/GYN, PA as the Tenant. The lease, which appears to be a form contract, refers to "Tenant" throughout and does not refer to Live Oak OB/GYN, PA by name except on the execution page. The lease also states, "By their signature[s] ... [Landlord] and Tenant covenant and agree as follows[.]" On the signature page, Neel and Skinner (now Welborne) signed on separate lines below the word "Tenant" without stating their official capacity in "Tenant." That is the only place where they signed the lease and nothing indicates they were also signing in their individual capacity. The parties agree that Neel and Welborne signed as representatives of Live Oak and that

Live Oak is obligated under the Lease. Nevertheless, Landlord contends that these signatures not only bind Live Oak but also bind Neel and Welborne individually as a matter of law.

**The lease is ambiguous**

Landlord argues that article 14.12 is not ambiguous and is capable of only one interpretation. The majority agrees that the language is not ambiguous and states, "the only meaning article 14.12 can have is as expressed—each and every person comprising Live Oak is jointly and severally liable for performance of all conditions and covenants binding on Live Oak." 378 S.W.3d at 604.

Applying that interpretation literally means that article 14.12 binds personally and individually all those persons and entities "comprising Tenant," even if those persons and entities did not sign the lease at all, did not sign the lease in an individual capacity, did not agree to be bound by the lease in their individual capacity, or did not even exist when the lease was signed.[1] That interpretation is contrary to established law that persons or entities that did not sign the lease cannot be held liable on the lease. *See Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 706 (Tex.App.-Houston [1st Dist.] 2009, no pet.) ("It goes without saying that a contract cannot bind a nonparty.") (quoting *EEOC v. Waf-*

---

1. The majority also states that Welborne and Live Oak "admit 'it is clear what [Landlord] was intending to accomplish by including Article 14.12,' ... [and that] Neel offers no alternative meaning for article 14.12[.]" 378 S.W.3d at 604. But Welborne and Live Oak's statement indicates that they believe it was Landlord's intent to hold Neel and Welborne individually liable, not that they concede that Landlord's interpretation of the language is correct as a matter of law. In fact, all of appellants' arguments below and to this Court were that Neel and Welborne are not liable

individually because they signed the lease in a representative capacity. And whether *Landlord* intended to bind Neel and Welborne individually is not determinative of whether Neel and Welborne are actually liable in their individual capacities as a matter of law. *See Coker*, 650 S.W.2d at 393 (stating that primary concern of court in construing written contract is to ascertain true intentions of parties as expressed in instrument and, to do this, court "should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract....").

*fle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)).

Landlord argues that it is not trying to bind any entity or person that might be included within the meaning of article 14.12 that did not also sign the lease. Consequently, Landlord asks us to construe article 14.12 against appellants as a matter of law, but not exactly as written. But by accepting Landlord's argument, we alter the meaning of article 14.12 from imposing individual liability on "[e]ach and every person ... comprising Tenant" to imposing individual liability on "each and every person ... comprising Tenant who signed the Lease." Because Landlord argues that the clause does not mean exactly what it says, I would conclude that it is ambiguous and that summary judgment should have been denied.

**Landlord did not establish personal liability as a matter of law**

Landlord also argues that this situation is like cases where the person signing on behalf of an entity also personally obligated himself. But in those cases the language in the documents stated that by signing the document in a representative capacity the person signing was also making himself individually liable. *See, e.g., Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 259 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (general manager agreed to personally guarantee liabilities of company); *Taylor–Made Hose, Inc. v. Wilkerson,* 21 S.W.3d 484, 488 (Tex.App.-San Antonio 2000, pet. denied) (en banc) (document stated above officer's name, "I, personally agree to pay all invoices and costs of collection. ..."); *Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320, 322–23 (Tex.App.-El Paso 1996, writ denied) (document stated above signature "the undersigned personally guarantees the payment of this account in his individual capacity").

The language in this lease is different. It does not state that Neel and Welborne, by signing as representatives of Live Oak, were agreeing to be personally liable. It was Landlord's burden to establish that there is no other interpretation possible, as a matter of law. Here, it is equally reasonable that Neel and Welborne signed only as representatives of Live Oak because they signed under "Tenant," Landlord agrees that they signed as representatives of Live Oak, and there is no line for Neel and Welborne to sign the lease in their individual capacity.

And Landlord's interpretation is contrary to established law that a person does not become personally liable by signing an agreement in a representative capacity. *See Latch v. Gratty, Inc.,* 107 S.W.3d 543, 545–46 (Tex.2003) ("The mere fact that [president of company] signed the agreement without indicating his agency is no evidence that he acted individually."); *Wright Grp. Architects–Planners, P.L.L.C. v. Pierce,* 343 S.W.3d 196, 201–02 (Tex.App.-Dallas 2011, no pet.) ("When it is apparent from the entire agreement that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation, it is the corporation's contract."); *Robertson v. Bland,* 517 S.W.2d 676, 679 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ dism'd) ("One who contracts in a representative capacity is not individually liable where, from the manner in which the instrument is executed, or from the nature of the instrument, it appears that it is the obligation of the person or legal entity represented and that such person or legal entity is the contracting party. ...").

When the meaning of language in a contract is uncertain or reasonably susceptible to more than one interpretation, it is ambiguous. *Exxon Corp.,* 868 S.W.2d at 302 (quoting *Coker,* 650 S.W.2d at 393–94). If

the contract is ambiguous, the issue cannot be decided by summary judgment. *Coker*, 650 S.W.2d at 394.. I would conclude that the language in article 14.12 is ambiguous and, combined with the question about whether Neel and Welborne signed the lease only in their representative capacities, precludes deciding these issues as a matter of law. Consequently, I would conclude that the trial court erred by granting summary judgment in favor of appellee. Because the majority concludes otherwise, I respectfully dissent.