**Dissenting and Opinion Filed August 14, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01115-CV

### DAVID S. BAGWELL, INDIVIDUALLY AND AS TRUSTEE OF THE DAVID S. BAGWELL TRUST, MARILYN D. GARNER, CHAPTER 7 TRUSTEE FOR THE DAVID BAGWELL COMPANY, AND EVERMORE COMMUNITIES, LTD., Appellants
### V.
### RIDGE AT ALTA VISTA INVESTMENTS I, LLC, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-04398-E**

# DISSENTING OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Dissenting Opinion by Justice FitzGerald

I dissent for two reasons. First, the trial judge abused his discretion by refusing to allow appellants to amend their answer to assert a fair-market-value offset against appellee's deficiency claim. Second, appellee's summary-judgment proof was defective and insufficient.

### A.      Appellants' motion for leave to amend should have been granted.

The trial judge should have allowed appellants to amend their answer to assert their right to a fair-market-value offset under section 51.003 of the property code. His refusal to do so was unreasonable and arbitrary, and it was accordingly an abuse of discretion.[1]

---

[1] "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

## 1. Facts

The relevant dates are as follows. Appellee filed suit in April 2010. In June 2010, the trial judge signed an agreed scheduling order setting the case for trial in June 2011. The deadline for amended pleadings asserting new causes of action or affirmative defenses was thirty days before the end of the discovery period. Although appellants assert that this deadline expired on April 27, 2011, appellee demonstrates in its brief that the amended-pleading deadline was actually in February 2011. The trial was later continued to November 2011. But the facts of the case changed in August 2011—after the amended-pleading deadline—when appellee foreclosed on the collateral for the debts. In October 2011, and without leave of court, appellee filed an amended pleading to change its claims to deficiency claims. The trial judge then continued the trial from November 2011 to March 2012. In February 2012, appellants moved for another continuance, and their attorneys moved to withdraw. The trial judge reset the case for April 16, 2012. Having already obtained summary judgment as to liability, appellee moved for summary judgment as to damages on March 14, 2012. Appellants obtained new counsel, and on March 30, 2014, appellants filed a response to the summary-judgment motion, a motion to determine the fair market value of the Old Grove Property under section 51.003 of the property code, and a motion to amend pleadings. During the week the case was set for trial, the trial judge heard appellants' motions, and appellants' counsel said that appellants' previous attorneys had simply missed the fair-market-value offset issue.[2] The judge denied appellants' motion for leave to amend pleadings and granted appellee's motion for summary judgment.

---

[2] Specifically, appellants' counsel said, "And I called [appellants' prior counsel] and asked him why it [the fair-market-value offset] wasn't brought, and it was missed. And that's really unfortunate. And I'm not going to try to tell you things that aren't true about that. It was missed, and it is really unfortunate."

## 2. Application of the law to the facts

The question presented is whether the trial judge abused his discretion by denying appellants' motion for leave to amend their pleadings and assert the fair-market-value offset under the property code. The trial judge's discretion to deny a late-offered amended pleading is quite narrow. Leave to amend "shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party."[3] This means that the judge must grant leave to amend unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amended pleading asserts a new cause of action or defense, making it prejudicial on its face, and the opposing party objects to the amendment.[4] An amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of trial itself; (2) the new matter could not have been anticipated by the opposing party in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case.[5]

Appellee does not contend that it produced any evidence of actual surprise or prejudice, so the question is whether appellants' requested amendment was prejudicial on its face. I would conclude that it was not prejudicial on its face because none of the "defining characteristics" of a facially prejudicial amendment were present.

First, appellants' proposed amendment to assert a fair-market-value offset would not have reshaped the nature of the trial itself. The only issue to be determined was how much credit appellants should receive for appellee's purchases of the collateral in foreclosure. Allowing the amendment would have affected only the method of calculating the credit as to one of the debts,

---

[3] TEX. R. CIV. P. 63.

[4] *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 622 (Tex. App.—Dallas 2010, no pet.).

[5] *Id*. at 623.

the one involving the Old Grove Property.  Appellants would have attempted to prove that the fair market value of that property exceeded appellee's credit bid, and appellee would have attempted to prove that it did not.  The nature of the trial itself would not have changed.

Second, appellants' fair-market-value offset could have been anticipated by appellee, considering the entire development of the case.  Appellee did not file its last amended pleading until October 2011—several months after the amended-pleading deadline had passed, several weeks after the foreclosures that reshaped the suit into a deficiency action, and only about a month before the trial setting then in place.  Yet, appellee apparently thought it was unnecessary to seek leave to amend its pleadings on this occasion.  Moreover, despite the significant new factual development in the case—the foreclosures—appellee opposed, at least initially, appellants' request for a continuance of the November trial setting.  The foreclosures and appellee's own late amendment of its petition were the first developments in the case from which appellee should have anticipated the possibility that appellants would assert a fair-market-value offset.

Appellants' November 2011 motion for continuance also gave appellee some indication that there might be issues involving the sale of the collateral.  In that motion, appellants asserted, "Questions have arisen with respect to the amounts recently obtained in judicial Bankruptcy Court auctions of the underlying real estate collateral."  Although it appears that appellee acquired the Old Grove Property in a nonjudicial foreclosure sale rather than in a bankruptcy auction, appellants' motion for continuance still put appellee on notice that there might be problems with appellee's acquisitions of the collateral.  At the very least, appellee could have anticipated that appellants would challenge the adequacy of the credits appellee was willing to apply to the debts.

–4–

Finally, it defies belief that appellee would have found it difficult to assemble a rebuttal case concerning the fair market value of the Old Grove Property, even on short notice. When appellants sought to raise the fair-market-value offset, only about eight months had elapsed since the foreclosures. Appellee, a sophisticated business entity, would not have foreclosed on the properties without exercising some diligence to ensure that its credit bids were less than and certainly did not exceed the fair market values of the properties.[6] The fruits of that diligence could not have disappeared in eight months. Appellee should have anticipated that appellants would raise a contest over the fair market values of some or all the collateral.

Third, allowance of the amendment would not have detrimentally affected appellee's presentation of its case. It simply would have permitted appellants to attempt to prove the fair market value of the Old Grove Property. Appellee could have simply called their own experts to testify that the fair market value did not exceed appellee's credit bid. Appellee could also have defended against the fair-market-value offset through cross-examination of appellants' valuation witness or witnesses. The proposed amendment does not justify any assumption that the amendment would have detrimentally affected appellee's trial presentation.

### 3. Response to the majority

The majority invokes the rule that a trial court has wide discretion to manage its docket and relies on the fact that the trial had been delayed twice after appellee amended its pleading before appellants sought to plead the fair-market-value offset. But this analysis ignores the sharp constraints on trial-court discretion when it comes to amending pleadings, as discussed above. More disconcerting, the majority's analysis ignores the key facts—appellants' original lawyer completely missed the most important defensive issue in the case. Once appellants obtained new

---

[6] According to appellee, it made a credit bid of $4,512,000 for the Old Grove Property, leaving a deficiency of about $1,265,000 on the related note. According to appellants, the fair market value of the Old Grove Property was actually $7,280,000, which would have wiped out the alleged deficiency.

counsel, he spotted the issue and acted promptly to put it before the court. These facts should have played a huge role in the trial judge's decision and should have compelled him to grant appellants' request for leave to amend. "The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law."[7]

The majority also upholds the trial judge's conclusion that appellee's presentation of its case would have been detrimentally affected if the trial judge had permitted appellants' amendment. This is not correct. Despite the April 16 trial setting, the case did not actually go to trial on April 16. Instead, the trial judge considered and granted appellee's motion for summary judgment on April 19. If the case was going to be disposed of on summary judgment, the trial judge should have allowed appellants to amend their pleadings and assert the fair-market-value offset.

### 4.    Conclusion

Because appellants' proposed amendment did not present any of the characteristics of an amended pleading that is prejudicial on its face, the trial judge erred by denying appellants' motion for leave to amend.

### B.    Appellee's summary-judgment proof was insufficient.

Appellee won summary judgment by two separate motions. After considering the first motion, the trial judge granted partial summary judgment that the notes and guaranties were valid and that appellee was entitled to enforce them. The trial judge later granted final summary judgment as to damages based on the second motion. The principal evidentiary support for each summary-judgment motion was an affidavit by a "manager" of appellee named Robert G. Paul. Various loan documents and guaranties were attached to the affidavits. In their fifth and sixth

---

[7] TEX. R. CIV. P. 1.

issues on appeal, appellants argue that Paul's affidavits were incompetent because Paul did not demonstrate that he had personal knowledge of the facts he testified to. They also point out that Paul's affidavits are contradictory and that the affidavits do not conclusively prove all facts necessary to justify summary judgment for appellee. I agree with appellants.

### 1. Evidentiary defects

The Paul affidavits are defective because appellee was not the original lender on these loans, and because Paul did not demonstrate that he has personal knowledge of the events that occurred before appellee purportedly acquired the loans in January 2010. According to the documents attached to Paul's affidavits, Texas State Bank was the original holder of the notes, which were executed in July 2006. Texas State Bank was also the beneficiary of the guaranties executed by appellants on the same date. According to Paul's first affidavit, Compass Bank became Texas State Bank's successor in interest, and Compass Bank sold the loans and related guaranties to appellee in January 2010. Also according to Paul's first affidavit, the loans matured in December 2009—before appellee acquired the loans—and each debtor defaulted. But Paul does not say that he ever worked for Texas State Bank or Compass Bank, nor does he state any other facts that would suggest he had personal knowledge of the 2006 loan transactions or of the alleged defaults.

A summary-judgment affidavit must be based on personal knowledge.[8] Moreover, the affiant must set forth facts affirmatively demonstrating the basis for such knowledge; a conclusory assertion of personal knowledge does not suffice.[9] Paul's affidavits do not show how he has personal knowledge of the events that occurred before appellee acquired the debts in January 2010. He testifies as follows in his first affidavit:

---

[8] TEX. R. CIV. P. 166a(f).

[9] *Neel v. Tenet HealthSystem Hosps. Dallas, Inc.*, 378 S.W.3d 597, 608 (Tex. App.—Dallas 2012, pet. denied).

1. . . . I have personal knowledge of each of the matters stated in this affidavit and they are true and correct.

2. I am presently employed by [appellee] in the capacity of Manager. As part of my duties, I am responsible for the servicing and collection of the indebtedness owed to [appellee] by [appellants] described in this Affidavit.

3. I am also a custodian of records for [appellee] with respect to the indebtedness owed to [appellee] by [appellants]. I am familiar with the manner and method in which [appellee] maintains its books and records. [Appellee] keeps these books and records in the regular course of its business. It is the regular course of [appellee]'s business for an employee with personal knowledge of each transaction or event to make a record of the transaction or event at or near the time of the transaction or event. These books and records are maintained by employees and agents whose duties it is to maintain the books and records accurately and completely.

4. I have reviewed the books and records of [appellee] with respect to the indebtedness of [appellants]. The business records of [appellee] support the statements contained in this Affidavit. I am authorized to make this Affidavit, and it is in support of Plaintiff's Motion for Summary Judgment. All of the records attached to this Affidavit are the originals or exact duplicates of the original.

Paul's second affidavit says the same thing with respect to Paul's personal knowledge.

In his first affidavit, Paul then purports to recount the history of the loans—the creation of the original debts and guaranties in favor of Texas State Bank in 2006, some extensions of the debts, the fact that Compass Bank became successor in interest in Texas State Bank, the debtors' defaults, and Compass Bank's assignments of the debts to appellee in January 2010. In his second affidavit, Paul changes the facts completely, testifying (contrary to his first affidavit and to the attached documents) that the debtors delivered the notes and guaranties to appellee (not Texas State Bank) in 2006. This inconsistency alone is enough to create genuine issues of material fact defeating summary judgment. Further, Paul discloses no facts that affirmatively show how he acquired personal knowledge of the key facts—that the original loan documents and guaranties are authentic and accurate, that the chain of title from Texas State Bank to appellee is good, or that the loans and guaranties were actually in default when appellee acquired

them in January 2010. The fact that he is now a manager for appellee does not suffice to demonstrate personal knowledge of the conduct of other entities years earlier.

The majority errs by accepting at face value Paul's assertions that appellee's business records "support the statements contained in this Affidavit" and that all the records attached to the affidavits "are the original or exact duplicates of the original." First, as shown above, Paul has not demonstrated that he has personal knowledge of the authenticity of the loan documents and guaranties. He does not say he was ever affiliated with the original debtors, appellants, Texas State Bank, or Compass Bank, nor does he otherwise explain how he personally knows that the attachments are authentic originals or copies of original documents dating to 2006 (the original loan documents and guaranties) and 2008 (the extension agreements). Nor does he show that he has personal knowledge of the facts necessary to qualify the documents as business records. On their face, the notes, guaranties, and extensions were executed by debtors, appellants, Texas State Bank, and Compass Bank. Paul does not show that he has personal knowledge that these documents were "business records," that is, records of factual matters, made at or near the time, by or from information transmitted by a person with knowledge, kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make the record.[10] We have said that one entity's business records can become the business records of another entity if (1) the records are incorporated into and kept in the course of the acquiring entity's business, (2) the acquiring entity typically relies on the accuracy of the records' contents, and (3) the circumstances otherwise indicate the documents' trustworthiness.[11] But Paul does not swear to these facts either. In short, Paul does not show that

---

[10] *See* TEX. R. EVID. 803(6).

[11] *See, e.g.*, *Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 130 (Tex. App.—Dallas 2014, no pet.).

he is competent to prove up the attached documents—either that they are authentic or that they are business records.

The majority asserts that Paul's affidavit is reliable because the attached documents "support his statements." But this reasoning is circular, lacks any factual basis, and is therefore unsound. Why is Paul's affidavit reliable? Because his testimony matches the contents of the attached documents.[12] Why are the attached documents reliable? Because Paul testifies that they are authentic business records. There is no independent evidence establishing the records' authenticity and business-record status from a witness who actually has personal knowledge about the authenticity and mode of generation of the documents.

The majority concludes by citing cases for the proposition that a summary-judgment affiant can establish personal knowledge by referring to true and correct copies of documents. For example, in one case we wrote, "References to true and correct copies of documents in support of an affidavit also establish[] personal knowledge."[13] Statements like this should not be taken to repeal the plain requirement of the summary-judgment rule that "[s]upporting and opposing affidavits *shall* be made on personal knowledge."[14] "Personal knowledge" is knowledge acquired through firsthand observation or experience, as opposed to knowledge based on what someone else has said.[15] Knowledge acquired by hearsay—even admissible hearsay, such as a proved-up business record—is not personal knowledge. The record in this case contains no testimony from a person with personal knowledge that proves up the loan documents either as to authenticity or as to the business-records requirements.

---

[12] Actually, only Paul's first affidavit matches the contents of the attached documents. As previously noted, his second affidavit says that the loan documents were delivered to appellee, but the documents reflect that they were delivered to Texas State Bank or Compass Bank.

[13] *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 792 (Tex. App.—Dallas 2013, pet. denied).

[14] TEX. R. CIV. P. 166a(f) (emphasis added).

[15] *Austin Traffic Signal Constr. Co., L.P. v. Transdyn Controls, Inc.*, No. 03-06-00655-CV, 2010 WL 3370292, at *7 (Tex. App.—Austin Aug. 24, 2010, no pet.) (mem. op.).

**2.    Failure to prove an essential element**

Finally, appellants point out that appellee failed to address all the elements of a deficiency claim.   Appellee had to prove (1) the amount due on the note at the time of foreclosure, (2) proper notice of acceleration was given, (3) a valid foreclosure sale was conducted, and (4) appellee gave appellants credit for the amount received at the foreclosure sale and any other legitimate credit.[16]   Appellee did not prove all those elements.   In particular, the Paul affidavits contain no evidence of proper notice of acceleration.   Thus, appellee failed to prove its entitlement to summary judgment.

The trial court erred by granting summary judgment in favor of appellee.

**C.    Conclusion**

For the foregoing reasons, I dissent.

121115DF.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

---

[16] *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 28 (Tex. App.—Dallas 1992, no writ).

–11–