**Opinion issued March 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00408-CV

———————————

**DENISE PRENT, Appellant**

**V.**

**RJET, L.L.C., Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-20652**

---

## MEMORANDUM OPINION

Appellant, Denise Prent, challenges the trial court's rendition of summary judgment in favor of appellee, rJET, L.L.C., in rJET's suit against Prent for breach of contract. In her sole issue, Prent contends that the trial court erred in granting rJET summary judgment.

We reverse and remand.

## Background

In its second amended petition, rJET alleged that on January 7, 2013, it entered into an "Aircraft Dry Lease" (the "lease") with Prent and Infinitus Aviation, L.L.C. ("Infinitus"),[1] of which Prent is president. rJET alleged that, pursuant to the lease, it agreed to lease an aircraft to Prent and Infinitus in exchange for "payments tied to use of the aircraft." And from January through March 2013, Prent and Infinitus used the aircraft and failed to pay rJET. Although rJet made numerous requests for flight information needed to properly produce invoices, Prent and Infinitus did not provide sufficient information. And even after rJET pieced together the necessary information and submitted invoices to Prent and Infinitis, no payment was made. In April 2013, after rJET had demanded payment and again received no payment, it filed the instant suit against Prent and Infinitus, alleging claims for breach of contract, quantum meruit, fraud, and conspiracy. And it sought actual damages of $88,876.00, punitive damages, and attorneys' fees.

rJET further alleged that, prior to execution of the lease, Prent had inspected the aircraft and "proclaimed that it was airworthy and fit for her use." Thereafter, Prent, as both the "Pilot in Command" and the party with "Operational Control,"

---

[1] Infinitus is not a party to this appeal.

2

had the responsibility under the lease to be fully aware of the airworthiness condition of the aircraft and to schedule maintenance. rJET was obligated under the lease to pay for maintenance, as determined necessary by Prent, and it did so.

rJET also alleged that Prent and a personal friend, John Leontaritis, had agreed that Prent would lease the aircraft from rJET, fly it around the country, and then refuse to pay rJet on the ground that the aircraft was not airworthy. Prent and Leontaritis then used the aircraft for trips to Las Vegas, Los Angeles, Phoenix, Boise, Pueblo, and Austin. They also used it to provide trips for their friends to Stuttgart, Austin, Palm Springs, and Orange County.

Prent and Infinitis answered, generally denying rJET's allegations and asserting various affirmative defenses. rJET then moved for summary judgment on its breach-of-contract claim, asserting that Prent and Infinitus had leased from it a Citation jet aircraft; used the aircraft on forty trips around the country between January 7, 2013 and March 10, 2013; collected $186,609.92 from their charter clients; and breached the lease by refusing to pay $85,888.68 in payments due.

rJET attached to its motion as summary-judgment evidence a copy of the lease; Prent and Infinitus's flight plan data and client invoices, which show that, between January 7, 2013 and March 10, 2013, they flew the aircraft on forty trips, earning $186,609.92; Prent's bank records, which show "commingled transactions of income derived from rJET" between Prent and Infinitus; the aircraft's

3

maintenance records and its certificate of airworthiness, dated July 5, 2012; excerpts from Prent's deposition, in which she testified that although she had flown the aircraft on numerous occasions and Infinitus had been fully paid by its charter clients, she made the decision not to pay rJET "[b]ecause of the airworthiness of the airplane"; and the affidavit of rJET's owner Jon Kingsley, Sr., who testified that after Prent had signed the lease, she had "never suggested that there was any problem with the plane or that it might even need any updated inspections," and yet she failed to pay rJET for "any usage of the aircraft."

Prent then filed an amended answer, including a verified denial, in which she argued that she was "not liable in the capacity in which she [was] sued" because she had executed the lease in her individual capacity. In Prent and Infinitus's response to rJET's summary-judgment motion, Prent again asserted that she, in her individual capacity, was not a party to the lease. She argued, rather, that "[i]t is clear from the four corners of the Lease that [she] signed [it] in a representative capacity" because the first paragraph of the lease "unambiguously indicates the Lessee is Infinitus Aviation, LLC" and she signed the lease as "President of lnfinitus Aviation, L.L.C." She asserted that rJET has "no evidence that any contract even exists between rJet and Denise Prent" and, although language immediately preceding the signature page indicates that she was responsible for operational control of the aircraft, this does not constitute evidence

that she is personally liable on the lease. To her response, Prent attached her affidavit, in which she explained that Infinitus does not deny that it contracted with rJET and it is a proper party. And she stated that Infinitus did not pay rJET for use of the aircraft because rJET had made representations concerning the airworthiness of the aircraft that were not true.

In its reply, rJET argued that the lease "places individual liability on Prent" because it states "I, THE UNDERSIGNED, Denise Prent (LESSEE), AS President (TITLE), OF Infinitus Aviation, LLC, CERTIFIES THAT I AM RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT . . . ." It notes that Prent drafted the lease, naming herself individually as "the Lessee," and "deposited half of the receipts into her personal bank account." And rJET objected to Prent's summary-judgment evidence as "irrelevant" or "inadmissible."

The trial court granted rJET summary judgment against Prent and Infinitus on rJET's breach-of-contract claim, awarding rJET $85,888.68 against Prent and Infinitus, jointly and severally, plus interest and attorney's fees. And rJET non-suited its quantum meruit, fraud, and conspiracy claims against Prent and Infinitus. Prent, solely in her individual capacity, appeals from the trial court's judgment.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no

genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

## Summary Judgment

In her sole issue, Prent argues that the trial court erred in granting rJet summary judgment against her in her individual capacity because she executed the lease "solely in her corporate capacity as President of Infinitus" and "the pleadings do not support a summary judgment on fraud or personal benefit by Prent."

Generally, a member or manager is not individually liable for the obligations of a limited liability company. *See* TEX. BUS. ORGS. CODE ANN. § 101.114 (Vernon 2012); *McCarthy v. Wani Venture*, A.S., 251 S.W.3d 573, 590 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also* TEX. BUS. ORGS. CODE ANN. §§ 21.223, 21.224 (Vernon 2012) (governing corporations), § 101.002 (extending sections 21.223–.226 to limited liability companies). "When it is

apparent from the entire agreement that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation, it is the corporation's contract." *Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 201 (Tex. App.—Dallas 2011, no pet.) (extending concept to professional limited liability company). Agency law is based on the same premise—an agent is not personally liable on contracts made for a disclosed principal, in the absence of an express agreement to be bound. *Neel v. Tenet HealthSystem Hosps. Dall., Inc.*, 378 S.W.3d 597, 604–05 (Tex. App.—Dallas 2012, pet. denied).

In construing a contract, a court must ascertain and give effect to the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id*. We begin our analysis with the contract's express language. *Id*. And we analyze the provisions of a contract "with reference to the whole agreement." *Frost Nat'l Bank v. L & F Dists., Ltd*., 165 S.W.3d 310, 312 (Tex. 2005); *see also Seagull Energy E&P, Inc. v. Eland Energy, Inc*., 207 S.W.3d 342, 345 (Tex. 2006) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." (citations omitted)).

Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank*, 165 S.W.3d at 312 (quoting *Reilly v. Rangers Mgmt., Inc*., 727 S.W.2d 527, 530 (Tex. 1987)).

If, after applying the pertinent contract construction rules, the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and we will construe the contract as a matter of law. *Id.* If a contract "is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). However, a contract is not ambiguous merely because the parties disagree on its meaning. *Seagull Energy E&P, Inc*., 207 S.W.3d at 345. Only where a contract is ambiguous may we consider the parties' interpretation and consider extraneous evidence to determine the true meaning of the contract. *Italian Cowboy Partners*, *Ltd*., 341 S.W.3d at 333–34.

Here, the first paragraph of the lease identifies the contracting parties as

rJET, as "Lessor," and Infinitus, as "Lessee," as follows:

> This Lease of Aircraft is made, effective as of the 7 day of January, 2013 by and between rJET, a limited liability corporation [sic] incorporated under the laws of the State of Texas, . . . (hereinafter referred to as "LESSOR") and Infinitus Aviation, LLC, a Texas Corporation [sic], [(]hereinafter referred to as "LESSEE") . . . .

In the body of the lease, the parties designated the respective duties of the Lessor

and Lessee. They referred to the Lessee in the singular and as an "it." Nothing

indicates an intent to bind Prent in her individual capacity. Section sixteen, which

contains the only mention of Prent, provides, in pertinent part, as follows:

> THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED UNDER [certain regulations] FOR OPERATIONS TO BE CONDUCTED UNDER THIS LEASE. DURING THE DURATION OF THIS LEASE, Infinitus Aviation, LLC, (LESSEE) IS CONSIDERED RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS LEASE. AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM [location].

> I, THE UNDERSIGNED, Denise Prent, (LESSEE), AS President (TITLE) OF Infinitus Aviation, LLC CERTIFIES THAT I AM RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT AND THAT I UNDERSTAND MY RESPONSIBILITES FOR COMPLIANCE WITH THE APPLICABLE FEDERAL AVIATION REGULATIONS.

> IN WITNESS WHEREOF, the PARTIES have executed this Lease:

> [Denise Prent]     Date 01/07/2013
> Signature

Denise Prent–Infinitus Aviation, LLC
_____

President
_____
Title

rJET argues that Prent is individually liable on the lease because the above language states, "I, THE UNDERSIGNED, **Denise Prent, (LESSEE),** AS President (TITLE) OF Infinitus Aviation, LLC CERTIF[Y] THAT I AM RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT. . . ." (bold emphasis added). rJET further argues that because Prent, who drafted the lease, "named both herself and her LLC as lessees," she is "a joint lessee and is liable for the payments."

In harmonizing provisions of a contract, no single provision is given controlling effect. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. And "terms stated earlier in an agreement must be favored over subsequent terms." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Here, in the first paragraph of the lease, the parties to the agreement are expressly identified as rJET and Infinitus. And nothing in the body of the lease demonstrates that the parties intended for Prent to be individually or jointly liable on the lease. Although Prent is identified in section sixteen as "Lessee," it is only in regard to her responsibility "as President" of Infinitus to ensure operation of the aircraft within governing regulations. And the signature block on the same page shows that Prent expressly executed the lease in her capacity as "President" of Infinitus.

10

In *Wright Group*, the court noted that the heading of the contract was the only place it referred to the full legal name of the firm, Wright Group Architects-Planners, P.L.L.C.; the language in the body of the contract referred only to "Wright Group"; and the contract was signed by Terrance Wright as "Principal, Wright Group." 343 S.W.3d at 201. The court concluded that, construing the contract as a whole, Wright "clearly signed [it] in a representative capacity." *Id.* at 202; *see also DiGiammatteo v. Olney*, 794 S.W.2d 103, 105 (Tex. App.—Dallas 1990, no writ) (holding contract executed in representative capacity where defendant signed as corporation's president and identified corporation as principal). Here, construing the lease as a whole, we conclude that it is not ambiguous and Prent executed it in her representative capacity on behalf of Infinitus.

Further, nothing in the language of the lease suggests that the parties intended for Prent to act as a guarantor or to otherwise assume individual or joint liability on the lease. *See, e.g.*, *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 258–60 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding document signed in individual capacity, despite use of corporate letterhead and title in signature, where language "I, personally, guaranty" all liabilities of corporation unambiguously indicated personal guaranty); *Taylor–Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488–89 (Tex. App.—San Antonio 2000, pet. denied)

(holding signature of company vice-president, who "personally agreed" to pay corporation's delinquent account, created individual liability as guarantor of corporate debt).

Although rJET included in its summary-judgment evidence Prent's bank statements and a spreadsheet of allegedly "commingled" funds, it did not, in its motion for summary judgment, allege that Prent had used Infinitus to perpetrate a fraud for her personal benefit. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.223, 101.002; *Shook v. Walden*, 368 S.W.3d 604, 612–22 (Tex. App.—Austin 2012, pet. denied) (discussing corporate veil-piercing doctrines and limited liability companies). A motion for summary judgment must itself expressly present the grounds upon which it is made, and it must stand or fall on these grounds alone. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *see* TEX. R. CIV. P. 166a(c). "[I]n determining whether grounds are expressly presented, we may not rely on briefs or summary judgment evidence." *Martinez*, 941 S.W.2d at 912. And rJET non-suited its fraud claim against Prent.

In sum, rJET did not conclusively establish that it is entitled, as a matter of law, to judgment against Prent in her individual capacity on its breach-of-contract claim. Accordingly, we hold that the trial court erred in granting rJET summary judgment against Prent.

We sustain Prent's sole issue.

## Conclusion

We reverse the portion of the trial court's judgment holding Prent individually liable on rJet's breach-of-contract claim, and we remand for further proceedings consistent with this opinion.[2]


Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

---

[2]     Prent requests that we render judgment in her favor or, alternatively, remand the case to the trial court for further proceedings.  Generally, an appellate court is entitled to render judgment in a summary-judgment context only when both parties have moved for a final summary judgment.  *See Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex. 1984); *Morales v. Morales*, 195 S.W.3d 188, 192 (Tex. App.—San Antonio 2006, pet. denied).  Here, although Prent previously moved for summary judgment on rJET's now non-suited claims, she did not move for summary judgment on rJET's breach-of-contract claim.  Prent's response to rJET's motion served only to preclude summary judgment in favor of rJET, and, accordingly, we may not render judgment in her favor on appeal.  *See Morales*, 195 S.W.3d at 192–93.